## Latrobe Municipal Authority v. Commonwealth

*Charles M. Lynch,* for appellants.
*Ward T. Kelsey,* for Commonwealth.

DENWORTH, *Member*, October 22, 1975—
Appellants, Latrobe Municipal Authority, Unity
Township Municipal Authority and Youngstown
Borough, all in Westmoreland County, Pa., have
appealed the action of the Pennsylvania Depart-

ment of Environmental Resources (hereinafter "DER") in awarding them each 61 priority points in connection with their applications for Federal funding under the provisions of the Federal Water Pollution Control Act (hereinafter "FWPCA"), of June 30, 1948, as added October 18, 1972, 86 Stat. 816, 33 U.S.C. §1251 et seq. Sixty-one priority points were not sufficient for appellants to be certified to the regional administrator of EPA (the Federal Environmental Protection Agency) for receipt of construction grant funds. Had each of these appellants been awarded 63 points, they would have been entitled to be certified to the Federal government for funding.

The effluent from the sewage treatment plant of Latrobe Municipal Authority flows into Loyalhanna Creek. This creek is part of the Kiskiminetas-Conemaugh Basin. Both the basin itself and Loyalhanna Creek downstream from the discharge point of the Latrobe Municipal Authority Treatment Plant are affected by mine drainage. Under DER regulations, stream segments which are significantly affected by mine drainage or pollution from non-point sources fall within a stream segment priority category III. The regulations assign eight priority points for stream segments in this category.

Appellant, Latrobe Municipal Authority, has been required by DER to provide a degree of treatment for its proposed improved and enlarged treatment plant greater than the degree of treatment usually required for treatment facilities discharging into streams affected with mine drainage. DER is requiring this greater degree of treatment because it has embarked upon a program to reclaim Loyalhanna Creek that will take approximately ten years to complete. It is thus requiring a degree of

treatment that will not degrade stream quality after the program is completed. It is appellants' contention that there is a basic irrationality and inconsistency between the two actions taken by DER, namely, requiring a greater degree of treatment than is usually required for acid-affected streams on the one hand, and awarding them priority points on the basis that the stream into which they are discharging is significantly acid affected on the other.

In order to dispose of this matter in an expeditious manner, the parties have submitted a stipulation of facts material to the disposition of this appeal. Hence, no evidentiary hearing has been held in this matter. However, the parties requested, and the board granted, oral argument before the board en banc to elucidate the complex issues presented by this appeal, in particular, the issue of whether or not the board has jurisdiction to act in this matter. Oral argument was held on July 31, 1975.

On the basis of the stipulation, the supporting briefs and oral arguments of the parties, we enter the following:

## FINDINGS OF FACT

1. Appellants are Latrobe Municipal Authority, Unity Township Municipal Authority and Youngstown Borough, all in Westmoreland County, Pa.

2. Appellee is DER, the agency of the Commonwealth authorized to make priority determinations regarding Federal grants for the construction of sewerage facilities pursuant to the provisions of FWPCA.

3. Prior to March 1, 1973, and subsequent to that date, appellants each filed applications for sewerage construction projects; Youngstown for a lateral

sewer system; Unity Township for a lateral and interceptor sewer system; and Latrobe Municipal Authority for the improvement and enlargement of its sewage treatment plant to treat the sewage emanating from the Loyalhanna Creek watershed in the appropriate portions of Unity Township, Derry Township and all of Youngstown Borough and Latrobe Borough in Westmoreland County.

4. The completed and submitted plans of Latrobe Municipal Authority expanded treatment plant provide for treatment in accordance with the Department's Water Quality Standards, Group B, with the addition of specific criteria for modified limits for the treatment of ammonia.

5. The treatment requirements, which exceed secondary treatment requirements, usually imposed upon treatment plants discharging into mine acid streams, were imposed upon the Latrobe plant because the department advises that its Bureau of Planning and Developmental Research has scheduled an abatement project for the significant mine acid drainage discharge into the Loyalhanna Creek at a location approximately one mile upstream from the Latrobe treatment plant. The estimated additional construction cost for the difference between a secondary treatment plant and the nature of the plant which the department is requiring Latrobe Municipal Authority to build is $3,000,000.

6. However, the Bureau of Water Quality Standards, in awarding Federal funding list priority points to the Latrobe-Unity-Youngstown projects has determined said projects to be entitled to the following priority points:

(1) Water pollution control      33
(2) Stream segment priority      8

| | | |
|---|---|---|
| (3) | Population affected | 10 |
| (4) | Enforcement status | 10 |
| | Total | 61 |

7. Appellants received "credit" for impact on aquatic life, in that the department's calculation of appellants' water pollution control factor included nine priority points, equivalent to "moderate" effect, for the fish and aquatic life use factor.

8. The specific area of priority points objected to by appellants is the assignment of but eight points under stream segment priority. The Latrobe project was placed in category III of stream segment priority, which is defined under Title 25 of the Rules and Regulations of the department, Chapter 103.6(a)(3), as "... segments in which streams are significantly affected by mine drainage or pollution from nonpoint sources—eight points."

9. The department calculated appellants' priority points in accordance with applicable regulations, namely, 25 Pa. Code, Chapter 103, Subchapter A.

10. Appellants' treatment plant discharges into Loyalhanna Creek, which is part of the Kiskiminetas-Conemaugh Basin. The Kiskiminetas-Conemaugh Basin has been classified by the department as category III, mine drainage affected.

11. Considering the Kiskiminetas-Conemaugh Basin as a whole, it is correct that the basin is properly classified as "mine drainage affected."

12. At the point of discharge from appellants' plant, Loyalhanna Creek is polluted by acid mine drainage.

13. The department received and rejected written and oral arguments submitted at its February 27, 1975, public hearing that Latrobe, if it is being

required to construct a treatment plant as if it were not on a mine-acid stream, should then have been consistently awarded at least the category II, 10 points, if not the category I, 15 points under stream segment priority.

14. Had the department awarded the Latrobe-Unity-Youngstown projects the requested two or more additional points, appellants, with 63 or more points, would have been upon the list of fundable projects submitted to the Environmental Protection Agency.

## DISCUSSION

This case presents one of the many issues of Federal versus State responsibility under the provisions of the FWPCA. Under the Federal act, grants are authorized out of allotments to States for the construction of sewage treatment plants. Applications, to be approved, must meet the limitations and conditions set forth in section 204 of the FWPCA: 33 U.S.C. §1284. The specific requirement of that section most germane to the issues of these appeals is section 204(a)(3), which provides:

"Before approving grants for any project for any treatment works under section 1281(g)(1) of this title the Administrator shall determine—
". . .
"(3) that such works have been certified by the appropriate State water pollution control agency as entitled to priority over such other works in the State in accordance with any applicable State plan under section 1313(e) of this title."

Section 303(e)(H) requires the State planning process to include an inventory and ranking in order of priority of need for construction of waste

treatment works required to meet the applicable requirements of sections 301 and 302 of the FWPCA. The Federal act requires that the administrator of EPA approve State plans submitted to him pursuant to these provisions. See 40 C.F.R. §§35.555, 35.557, 35.915(d). Thus, FWPCA mandates the establishment of a priority list of eligible applicants for grants derived from a priority system approved by the Federal government as part of the State planning process required under section 303(e) of the FWPCA. In the Commonwealth of Pennsylvania, the priority system has been embodied in DER regulations. These regulations, 25 Pa. Code §103.1 et seq., are consistent with the requirements of 40 C.F.R. §35.915(c)(1) which provides:

"In determining which projects to fund the State shall consider the severity of pollution problems, the population affected, the need for preservation of high quality waters, and national priorities as well as total funds available, project and treatment works sequence and additional factors identified by the State in its priority system. The list of projects to be funded should be developed in conjunction with the municipal discharge inventory. It should be consistent with the municipal discharge inventory but need not rigidly follow the ranking of discharges in the inventory. The net result should be a concentration of projects to be funded in high priority areas. The Regional Administrator may require the State agency to expain the basis for priority determination for specific projects located in low priority areas (e.g., court orders, critical dischargers on lower priority segments, etc.)."

Chapter 103 of the department's regulations, which we presume has at one time been approved

by the administrator in accordance with 40 C.F.R. §§35.555, 35.557, 35.915(d), provides for the assignment of priority points in four categories, water pollution control, stream segment priority, population affected and enforcement status. The particular regulation, 25 Pa. Code §103.6(a)-(b), dealing with stream segment priority, is as follows:

"(a) Priority points attributable to this factor will be assigned in accordance with the following:

"(1) Category I—These segments represent water quality segments and certain designated effluent limited segments, based on high growth potential and complexity of pollution problems—15 points.

"(2) Category II—These segments represent effluent limited segments, except those in Category I and certain designated water quality limited segments, based on lower growth potential and less complex pollution problems—ten points.

"(3) Category III—These segments represent segments in which streams are significantly affected by mine drainage or pollution from nonpoint sources—eight points.

"(b) Designated stream segment categories shall be those identified in the Program Plan submitted to the United States Environmental Protection Agency in accordance with section 106 of the Federal Act."

The department has strenuously argued that this board has no jurisdiction to review this matter on the grounds, first, that the assignment of priority points for stream segment is simply a ministerial action and not a discretionary "decision" of the department (see Fricchione v. Department of Education, 4 Pa. Commonwealth Ct. 288, 287 A. 2d 442 (1972)), second, that appellants' interest in Federal

funds is only an expectancy and not a right, privilege, immunity, duty or obligation as to which there can be an appealable "adjudication" under the Administrative Agency Law, Act of June 4, 1945, P.L. 1388, as amended, 71 P.S. §1710.1 et seq. (see Department of Public Instruction v. Parker Body & Fender School, 79 D. & C. 573 (C. P. Dauphin, 1951)), and/or third, that the practical problems inherent in review of a challenge to the priority list by one municipality make the department's action unreviewable at the State level.

Our view of the matter, which includes some elements of the department's arguments, is that the board may have jurisdiction to review actions of the department in implementation of the Federal law, but that it cannot exercise jurisdiction in a case of this sort because of the nature of the question involved and the failure of appellants to make out a sufficient claim for review. The State's function here is to implement the Federal scheme for funding municipal sewage treatment projects through a priority list that is part of the State's federally "approved" plan. However, we do not see the fact that there is an ultimate Federal approval of the State's plan and yearly list as necessarily removing the matter from the board's review. Where the Federal legislative scheme delegates responsibility to the State environmental agency—in this case for establishing a priority ranking system and coming up with an annual priority list—the consequence must normally be to subject the State agency's action to the State's administrative review process.[1] This is clear, for instance, in certifi-

1. The State statutes governing this board's jurisdiction do not appear to us to preclude review of State action taken under Federal law, section 1921-A(a) of the Administrative Code of April 9, 1939, P. L. 177, as amended, 71 P. S. §510-21(a):

cation cases under the FWPCA where the State's certification to the Federal EPA administrator of new conditions to be attached to the grant of a National Pollutional Discharge Elimination System permit is a State action reviewable by this board, even though it is an implementation of the Federal law and the permit is still subject to Federal approval by the administrator. See 40 C.F.R. §§125.15, 125.35, 125.36. We are not willing to say that there could never be any challenge to the State's priority list that this board could consider because it is conceivable that there might be some unauthorized or otherwise invalid action taken by the department in the implementation of this aspect of the Federal law that would thus elude redress. However, because of the nature of the question and the consequence of any order the board might issue, we believe that the board must refrain from exercising jurisdiction over challenges to the

"(a) The Environmental Hearing Board shall have the power and its duties shall be to hold hearings and issue adjudications under the provisions of the act of June 4, 1945 (P.L. 1388), known as the 'Administrative Agency Law,' on any order, permit, license or decision of the Department of Environmental Resources."

Reviewable "actions" of the department are defined in the board's rules as, 25 Pa. Code §21.2(1):

"Any order, decree, decision, determination or ruling by the department or local agency affecting personal or property rights, privileges, immunities, duties, liabilites [liabilities] or obligations of any person, including, but not limited to, denials, modifications, suspensions and revocations of permits, licenses and registrations; orders to cease the operation of an establishment or facility; orders to correct conditions endangering waters of the Commonwealth; orders to construct sewers and treatment facilities; and orders to abate air pollution; and appeals from and complaints for the assessment of civil penalties."

We think that the assignment of priority points would clearly be a "decision" or "determination" of the department if it were solely a matter of State law, so that the essential question is whether the relationship of the department's action to the Federal law removes it from the board's jurisdiction.

priority list on any but the most creditable showing of invalidity of the State's implementing regulations under State or Federal law or misapplication of its own rules by the State agency.

The primary practical as well as legal obstacle to review here is that only one of the numerous parties affected by the State's priority list is before the board. Thus, the board is in no position to weigh the relative merits of claimants to Federal funds, and might indeed produce havoc by ordering that one municipality's project should be included on that list when there are no more funds to go around. It would seem, therefore, that, in general, review of conflicting claims must be sorted out by the Federal administrator simply because all the affected parties are before him. And it may be, as the Commonwealth suggests, that no review of his determinations is available under the Federal law other than by the public hearing (which is actually prior to his final determination) provided for in 40 C.F.R. §35.915(f). It is true that the FWPCA does not provide for review of the administrator's final determinations in this area as it does in some other areas, see, e.g., section 509(b) of the FWPCA, 33 U.S.C. §1369(b), and 40 C.F.R. §§125.34(c) and 125.36, and it may be that this absence is an indication that Congress did not think the allocation of these Federal grants should be subject to judicial review.[2] That, however, is a question of Federal law that we need not resolve here.

2. See on this subject Davis, Administrative Law Treatise, Vol. IV, Ch. 28, "Unreviewable Action", particularly, section 28.09, Statutes Inexplicitly Precluding Review, and cases cited therein, particularly, Butte, A. & P. Ry. Co. v. U.S., 290 U.S. 127 (1933); Rural Electrification Administration v. Northern States Power Co., 373 F. 2d 686, 700 (8th Cir., 1967), cert. den. 387 U.S. 945 (1967); Alabama Power Co. v. Alabama Electric Cooperative, 394 F. 2d 672, 675 (5th Cir., 1968), cert. den. 393 U.S. 1000 (1968). Cf. Z. & F. Assets Corp. v. Hull, 311 U.S. 470

So far as our power is concerned, we conclude that this board cannot review a challenge to the priority list without a colorable showing that the State's regulations establishing the bases for priority ranking, 25 Pa. Code §103.1 et seq., are invalid under State or even Federal law, or that the department flagrantly misapplied those regulations. No such showing is made here. Appellants have not claimed that the priority regulations are invalid under State or Federal law or that they were misapplied to them. They do perhaps suggest that the stream segment regulation is invalid *as applied to them* because it is inconsistent with what they are obliged to do under other provisions of State law. We do not agree. Appellants are, perhaps unfortunately, saddled with the consequences of two different, but reasonable and appropriate, State goals—cleaning up acid-mine-drainage affected waters of the Commonwealth under The Clean Streams Law on the one hand, and allocating Federal funds to the most urgently needed municipal sewerage treatment projects on the other. It is not really inconsistent for the State to require a tertiary plant in order to achieve its long-term goal of reclaiming an acid-mine-drainage affected stream, and yet to regard that objective as not equivalent to protecting less polluted streams when it comes to funding priorities. We are sympathetic to appellants' worry that the Federal funds will dry up before their project comes up for funding, and that they will be left with an expensive obligation under State law. However, they have not shown that the State's action was invalid (or even, really, incon-

(1941), particularly concurring opinion of Justices Black and Douglas at pages 492-93, which holds, although in the context of foreign policy, that administrative certification and payment of claims out of a limited fund is a political question and, as such, is not reviewable.

sistent) and, hence, they have not made out a sufficient claim for review by this board. Although this conclusion is in some sense a judgment of the insufficiency of appellants' claim on the merits, our conclusion is jurisdictional in that we refuse to consider relative claims to Federal funds on such a claim.

## CONCLUSIONS OF LAW

1. As part of the State plan that is annually approved by the Federal administrator under the FWPCA and implementing regulations, the Department of Environmental Resources has responsibility for establishing a priority ranking system and using it to compile an annual priority list of municipal sewage treatment projects that are entitled to the State's share of Federal funding.

2. Where the Federal legislative scheme under the FWPCA delegates responsibility to the State's environmental agency for implementation of the Federal law, the normal consequence must be to subject the State agency's action to the State's administrative review process, even though there may be further approval by the Federal administrator.

3. Because of the nature of the question involved here, namely, the right to Federal funds, and the fact that the board does not have all the interested parties before it, the board cannot entertain a challenge to the priority list without a colorable showing that the State's implementing regulations are invalid under State or Federal law or that the State has flagrantly misapplied its own regulations.

4. Appellants have not made a showing that the department's action was in any way invalid and, hence, have not made out a sufficient claim for review by this board.

## ORDER

And now, October 22, 1975, the appeals of Latrobe Municipal Authority, Unity Township Municipal Authority and Youngstown Borough, all in Westmoreland County, Pa., are quashed for lack of jurisdiction.

## CONCURRING OPINION

JOSEPH L. COHEN, *Member*—I concur in the disposition of this matter on the basis that we lack jurisdiction to entertain the appeal. However, I disagree that even in those limited circumstances set forth in the adjudication, we may exercise our jurisdiction to review priority determinations made by DER pursuant to the mandate of the Federal Water Pollution Control Act, 33 U.S.C. §1251 et seq.

In my opinion, we lack jurisdiction to hear *any* appeals of this nature for the reason that we have jurisdiction over neither EPA nor those municipalities who have been awarded a sufficient number of priority points to enable them to be eligible for Federal funding. Since we have no jurisdiction over EPA, we can make no binding decision regarding its responsibilities in matters of this sort. Our lack of jurisdiction over the other municipalities who have been determined to be eligible for grants would not enable us to make a determination with regard to the entire list submitted to EPA. Inasmuch as there is a finite sum of money available, it follows that were we to determine in favor of any appellant, we would be adversely affecting other municipalities without their being a party to the proceedings. Such a result could not be justified under any circumstances.

It appears to me that a much fairer method of dealing with this type of matter is to initiate proceedings in a Federal court to restrain DER and EPA from making any awards to Pennsylvania municipalities until it is determined whether a given municipality was properly excluded from priority certification. In such a proceeding, the court could obtain the jurisdiction over the municipalities who have been certified and those who have not been certified and make a determination as to the propriety of the entire list on the basis of evaluating the total process involved in its compilation. However, to suggest that a party may come before this board to have its priority point determination reviewed without regard to other municipalities and without regard to what the Federal government might do is a clear invitation to parties to engage in an exercise of futility.